UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SCOTT COLLINS, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NTN BEARING CORPORATION OF AMERICA, NTN USA CORPORATION, and AMERICAN NTN BEARING MANUFACTURING CORPORATION.<br><br>Defendants. | Case No. 1:24-cv-06726<br><br>Hon. Mary M. Rowland |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

Plaintiff Scott Collins ("Plaintiff" or "Collins") responds to Defendants' Motion to Dismiss pursuant to F.R.C.P. 12(b)(6) ("Motion") and respectfully states as follows:

**INTRODUCTION**

Defendants NTN Bearing Corporation of America, NTN USA Corporation, and American NTN Bearing Manufacturing Corporation, (collectively, "NTN") moved to dismiss Plaintiff's Class Action Complaint in its entirety. But NTN misstates Plaintiff's factual allegations and theory of liability and its legal arguments have no support under the plain language of GIPA or existing case law. The Motion should be denied accordingly.

**PROCEDURAL HISTORY AND FACTS**

Collins filed his putative Class Action Complaint against NTN on June 28, 2024 in Illinois state court. *See* Compl. (ECF 1 at Ex. A). NTN removed the case to this Court, *see* Notice of

Removal (ECF 1), and simultaneously moved to dismiss Collins' Class Action Complaint. *See* Mot. to Dismiss (ECF 5).

In his Complaint, Collins alleges the following well-pleaded facts: NTN is one of the world's largest manufacturers of bearings and constant velocity joints. Compl. at ¶ 1. Collins, a resident of Elgin, Illinois at all relevant times, applied for a job in 2023 to work at NTN's Elgin, Illinois facility. *Id.* at ¶¶ 8, 31. As part of the pre-employment application process, and as a condition of his employment, Collins was required to take a mandatory physical examination via a third-party medical provider—Physicians Immediate Care—that was selected by NTN. *Id.* at ¶¶ 6, 32, 55. During that examination, NTN's provider required Collins to answer whether there was a history of high cholesterol, heart disease, or high blood pressure in his family. *Id.* at ¶¶ 33-34, 53. NTN did not instruct Collins to refuse to answer any questions about his family medical history during the examination or the pre-employment application process. *Id.* at ¶ 35. NTN requires medical examinations as part of the pre-employment application process for all of its potential employees. *Id.* at ¶¶ 23, 28; *see also* Decl. of Staci Foss at ¶ 6 (ECF 1-4). During these evaluations, NTN asks potential employees (including Collins) questions about their family medical histories, including family histories of heart disease, diabetes, or cancer. *Id.* at ¶¶ 26, 53-55.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) "challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." Fed. R. 12(b)(6); *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015). The complaint is sufficient, and the motion must fail, when the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts accept factual allegations in the complaint as true when deciding a motion to dismiss. *Kanter v. Barr*, 919 F.3d 437, 441 (7th Cir. 2019) (abrogated on other grounds).

## **ARGUMENT**

NTN makes three arguments in support of its Motion, none of which have any legal support, and two of which misstate Plaintiff's theory of liability. Notably, NTN **does not argue** that the action Plaintiff identifies as a GIPA violation—a medical provider asking for and obtaining genetic information during the pre-employment application process—would fail to support a claim under the law.

### A. The Solicitation of Plaintiff's Genetic Information During the Pre-Employment Application Process was Itself is a Violation of GIPA.

NTN first argues that Plaintiff does not allege that providing genetic information was a condition of employment, and therefore there was no GIPA violation. But this misconstrues Plaintiff's claim; it was the **solicitation during the pre-employment application process itself** that constitutes the GIPA violation. Section 25(c)(1) of GIPA provides that no employer shall ***directly or indirectly*** "solicit, request, require or purchase genetic testing or genetic information of a person or a family member of the person, or administer a genetic test to a person or a family member of the person as a condition of employment, ***preemployment application***, labor organization membership, or licensure." 410 ILCS 513/25(c)(1) (emphasis added). The plain language of the statute makes clear that (directly or indirectly) soliciting genetic information as a condition of the pre-employment application process alone constitutes a GIPA violation. *See*, *e.g.*, *McKnight v. United Airlines, Inc.*, 2024 WL 3426807, at *4 (N.D. Ill. July 16, 2024) (finding plaintiffs' allegations that their genetic information was solicited during required pre-employment application physical examinations to be sufficient to state a claim under GIPA); *Branson v.*

3

*Caterpillar, Inc.*, 2024 WL 3823157, at * 3 (N.D. Ill. Aug. 14, 2024) (in denying defendant's motion to dismiss, court held that "[a] request for an employee's family medical history, even without explicit reference to a disease or disorder suggesting genetic predisposition, is a request for genetic information under GIPA."); *Weller v. Sagility*, 23-cv-15626, Dkt. 19 (N.D. Ill. March 25, 2024) (allegation that plaintiff disclosed family medical history during telephonic interview that was a condition of employment sufficient to state a claim under GIPA); *Williams v. The Peoples Gas Light and Coke Co.*, 2023 CH 08058 (Cir. Ct. Ill. July 1, 2024) ("as Plaintiff alleges that the third-party physician requested information relating to [his parent's] medical conditions including cardiac health, cancer, and diabetes, Plaintiff has sufficiently alleged the solicitation of genetic information as required under GIPA for pleading purposes.").

This is exactly what Plaintiff alleges in his Complaint. NTN required potential employees to submit to medical examinations as part of its pre-employment application process. Compl. at ¶¶ 23, 53; *see also* Decl. of Staci Foss at ¶ 6. He underwent one of these examinations as a condition of the pre-employment application process. *Id.* at ¶¶ 32, 55. At the examination, Plaintiff was asked and required to disclose whether there was a history of high cholesterol, heart disease, or high blood pressure in his family. *Id.* at ¶¶ 34, 53-55. This is a textbook GIPA claim, as evidenced by the statutory language and the courts' reasoning in *McKnight*, *Branson*, *Weller*, and *Willams*. NTN's attempt to reframe or redefine Plaintiff's claim fails, as does this argument for dismissal.

**B. Defendants Misstate Plaintiff's Theory of Liability Again—the GIPA Violation is the Solicitation of Genetic Information, not a Lack of Instruction from NTN.**

NTN next argues that GIPA does not require a defendant to instruct an employee or potential employee not to provide their genetic information. Regardless of whether this statement is true, it is not Plaintiff's claim in this matter. Collins asserts that: (1) NTN requires prospective

4

employees to undergo a physical examination; (2) Collins underwent one of these examinations as part of NTN's pre-employment application process; and (3) he was required to disclose his genetic information as part of that examination. *See*, *e.g.*, Compl at ¶¶ 23, 32-34, 53. Plaintiff's allegations regarding the lack of instructions do, in fact, defeat NTN's defense that the requests were inadvertent. But they do not form the crux of Plaintiff's affirmative claim.

NTN's argument on this issue meanders from discussions of *Miranda*, to textualist statutory interpretations, to the obligation of individuals themselves to know the law. While it is difficult to parse out NTN's specific argument, to the extent NTN is simply trying to argue that it "was not obligated to anticipate the third-party provider's extraneous questions about family medical history," Mot. to Dismiss at 6, this is wrong. GIPA prohibits an employer from directly or ***indirectly*** soliciting genetic information from a prospective employee as a condition of the pre-employment application process. That is exactly what NTN did; Collins underwent his required physical examination with a third-party provider selected by NTN as part of its pre-employment application process and was required to disclose his family's medical history (*i.e.*, genetic information) to that provider.

NTN was in complete control of the process.[1] During the physical examinations at issue, NTN, through its approved medical provider, solicited and compelled the disclosure of genetic information from job applicants, including Collins. It is very much NTN's job to ensure that its required pre-employment application process complies with the law. *United States v. Dish Network L.L.C.*, 954 F.3d 970, 976 (7th Cir. 2020) ("The norm of agency is that a principal is liable for the wrongful acts of the agent taken within the scope of the agency—that is, the authority to

---

[1] Notably, NTN admits in its supporting declaration that it established the requirement of a physical examination by a medical professional for its pre-employment application process. *See* Decl. of Staci Foss at ¶ 6.

complete the task assigned by the principal."). Moreover, the Complaint makes clear that, at a minimum, NTN *indirectly* solicited Plaintiff's genetic information by requiring him to undergo a medical examination with an approved third-party provider during which he was required to disclose his family medical history. That is all that is needed to establish a violation under the plain and unambiguous language in sec. 25(c)(1) of GIPA. Indeed, this precise issue was addressed in *Williams v. The Peoples Gas Light and Coke Co., supra.*,[2] in which the trial court explicitly concluded that Illinois employers face liability under GIPA for the conduct of a third-party medical provider during a mandatory pre-employment examination even in the absence of an agency relationship between the employer and provider.

In the present case, Plaintiff's allegations, which must be accepted as true for the purposes of the Motion, are sufficient to establish that NTN either directly or indirectly solicited Plaintiff's genetic information in violation of GIPA. Consequently, the Motion should be denied.

    **C.**    **Case Law is Clear that NTN Did Not "Inadvertently" Request Family Medical History.**

Finally, NTN argues—without support—that if it did request genetic information, such request was inadvertent. GIPA states that "inadvertently requesting family medical history by an employer, employment agency, labor organization, and licensing agency does not violate this Act." 410 ILCS 513/25(g). But this exception to the general disclosure rule is more appropriately raised as an affirmative defense that, if even applicable, raises factual issues that must be determined at summary judgment or trial, not at the pleading stage. *See Branson*, 2024 WL 3823157 at * 4 (rejecting the inadvertent request exception to GIPA at the motion to dismiss stage because the defense requires a fact-specific analysis). The issue of NTN's intent regarding the

---

[2] A true and correct copy of the circuit court's order denying defendant's motion to dismiss is attached as **Exhibit 1**.

supposed inadvertent disclosure of Plaintiff's family medical history is not yet ripe for determination and does not serve to bar Plaintiff's lawsuit at this preliminary stage of the litigation. *Id*. In fact, given the allegations in the Complaint (and the lack of evidence establishing what, if any, limitations NTN placed upon its chosen third-party medical provision), it is reasonable to infer that NTN's insistence that Plaintiff submit to a pre-employment medical examination would have resulted in the disclosure of his family medical history. Thus, as in *Branson*, the Complaint states a valid claim under GIPA and the Motion must be denied.

In addition to the above, the case law interpreting the "analogous safe harbor provision" found in the Genetic Information Nondiscrimination Act ("GINA") is instructive. GINA has a similar provision, exempting instances "where an employer inadvertently requests or requires family medical history of the employee or family member of the employee." 42 U.S.C. § 2000ff-1(b). This language is clarified in regulations stating that "[i]f a covered entity acquires genetic information in response to a lawful request for medical information, the acquisition of genetic information will not generally be considered inadvertent unless the covered entity directs the individual and/or health care provider from whom it requested medical information ... not to provide genetic information." 29 C.F.R. § 1635.8(b)(1)(i)(A). "The exceptions to this general rule are limited, such as when 'an overly broad *response* is received in response to a tailored request'…; the request is made under certain employment laws…; or the disclosure is made in some kind of accidental communication, like an overheard conversation…" *Taylor v. Union Pac. R.R. Co.*, 2024 WL 3425751, at *6 (N.D. Ill. July 16, 2024) (emphasis added).

Here, Plaintiff did not give an "overly broad response" to a "tailored request" not seeking genetic information. Instead, he was asked for genetic information (whether there was a history of high cholesterol, heart disease, or high blood pressure in his family) and he provided genetic

7

information in response to that direct request. Plaintiff explicitly asserts that NTN did not direct him to not provide genetic information during the required physical examination during the pre-employment application process. That itself defeats NTN's argument, as made clear by *Taylor*. *Id.* at *6 ("During that examination, [defendant's] medical provider allegedly asked about family medical history, including cardiac health, cancer, and diabetes, through written and verbal questions…At this stage, that is enough to allege that [defendant's] request or solicitation was not inadvertent.").

The cases NTN cites are either *supportive* Plaintiff's position or are inapplicable, especially at the motion to dismiss stage. NTN cites *Montgomery v. Union Pac. R.R. Co.*,[3] where the court ruled in favor of the *plaintiff* at summary judgment on the issue of whether a request for medical history was inadvertent. Even though there was "no dispute that Defendant did not use Plaintiff's genetic information or family medical history to make its fitness-for-duty determination," *id.* at *4, the court still denied summary judgment on the plaintiff's GINA claim because it had requested medical information that it should have known could contain genetic information. *Id.* at *9. This case relied on by NTN in its argument *supports* Plaintiff's claims. *See also Jackson v. Regal Beloit Am., Inc.*, 2018 WL 3078760, * 17 (granting summary judgment to plaintiff on GINA claim where defendant failed to meet burden establishing request for information was inadvertent).

The other cases cited by NTN are inapplicable. The court's analysis of the plaintiff's GINA claim in *Tedesco v. Pearson Educ., Inc.*[4] turned on whether an employer's knowledge of plaintiff's father's suicide implicated the receipt of "genetic information" under GINA. NTN's cherry-picked quotations from this case deal with the exception to GINA for asking questions *out of concern for an employee's wellbeing*, not as a condition of employment or the pre-employment application

---

[3] *Montgomery v. Union Pac. R.R. Co.*, 2018 WL 6110930, at *4 (D. Ariz. Nov. 21, 2018).
[4] *Tedesco v. Pearson Educ., Inc.,* 2021 WL 2291148, at *6 (E.D. La. June 4, 2021).

process. *Id.* (citing 29 C.F.R. § 1635.8(b)(1)(ii)(B) (providing that the "inadvertent acquisition of genetic information" exception applies if the employer collected genetic information, inter alia, "in response to an ordinary expression of concern" for the employee or a family member and providing examples). It is hard to imagine less analogous circumstances than these in comparison to Plaintiff's experience, where he was asked to provide genetic information during the pre-employment physical examination required by NTN.

*Riechmann v. Cutler-Hammer, Inc.*,[5] cited by NTN for the proposition that it cannot be held liable for medical inquiries made by a third-party physician "on his own initiative," involved (1) the American Disabilities Act; (2) a claim not at all analogous to Plaintiff's GIPA claim; and (3) the disposition of a *post-trial motion* after the parties had the benefit of full discovery and findings of fact from a jury after a trial. Even if *Riechmann* were applicable, which it is not, NTN has admitted Plaintiff was required to take his physical examination as part of the pre-employment application process, and at that examination he was asked to provide genetic information. That is sufficient to state a claim.

Finally, NTN's summary conclusion that "no reasonable factfinder could conclude that NTN intended the provider would ask questions about family medical history…" is absurd. Taking a patient history, including family medical history, is a standard part of any physical examination.[6] NTN made each of its prospective employees go through a pre-employment application process

---

[5] *Riechmann v. Cutler-Hammer, Inc.*, 183 F. Supp. 2d 1292, 1299-1300 (D. Kan. 2001).
[6] *See, e.g.,* https://www.webmd.com/a-to-z-guides/annual-physical-examinations (during a physical examination the doctor will "update your personal and family medical history.") (last visited Aug. 7, 2024); https://www.ama-assn.org/delivering-care/precision-medicine/collecting-family-history (American Medical Association article discussing importance of collecting family history to "help[] physicians and other health care practitioners provide better care for patients.") (last visited Aug. 7, 2024); https://www.ncbi.nlm.nih.gov/books/NBK534249/ (National Institute of Health article on "Medical History" noting that "Inquiring about the biological mother, father, and extended family helps clinicians understand the risk of cardiovascular disease, respiratory disease, or endocrine disorders, including coronary artery disease, chronic obstructive pulmonary disease, or diabetes.") (last visited Aug. 7, 2024).

which included a physical examination. By its own admission, 452 individuals were "hired or conditionally hired and…required to complete a pre-employment physical examination conducted by a third-party medical provider." *See* Decl. of Staci Foss at ¶ 6. NTN is thus representing to the Court that at no time, over the court of five years and 452 individual examinations, that it ever thought its pre-employment application process included questions to its prospective employees about their family medical history. While this admitted corporate mismanagement helps explain the pattern of lawbreaking alleged in the Complaint, it does not excuse it.

## CONCLUSION

Collins' Class Action Complaint contains sufficient allegations to plausibly state a claim under GIPA. NTN's arguments have no basis in law or the pleadings. Consequently, the Court should deny NTN's Motion in its entirety.

Dated: September 9, 2024

Respectfully submitted,

/s/ S. Jarret Raab
Gary M. Klinger
S. Jarret Raab
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
Tel. 866.525.0878
gklinger@milberg.com
jraab@milberg.com

Zachary Arbitman (IL Bar No. 6348130)
Alan M. Feldman*
George Donnelly*
**FELDMAN SHEPHERD WOHLGELERNTER TANNER WEINSTOCK & DODIG, LLP**
1845 Walnut Street, 21st Floor
Philadelphia, Pennsylvania 19103
Tel: 215.567.8300
afeldman@feldmanshepherd.com
zarbitman@feldmanshepherd.com
gdonnelly@feldmanshepherd.com

*Pro Hac Vice* forthcoming

*Counsel for Plaintiff and the proposed class*